IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE FANIOLA, individually and
as the parent and natural guardian of
MATTHEW HART, a minor child,

       Plaintiff,

vs.                                                                                              No. CIV-02-1011 JB/RLP

MAZDA MOTOR CORPORATION, a foreign
corporation, MAZDA MOTOR OF AMERICA,
a California corporation, and FORD MOTOR
COMPANY, a Michigan corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Compel Discovery,

filed August 8, 2003 (Doc. 32).  The issue is whether the Court should compel Defendant Mazda

Motor Corporation d/b/a Mazda North American Operation  ("MNAO") to amend its responses to

Plaintiff Michelle Faniola's ("Faniola") interrogatories and requests for production.  The Court will

grant Faniola's motion in part and deny the motion in part.

## BACKGROUND

The accident giving rise to Faniola's Complaint occurred on August 21, 1999.  This case

involves alleged catastrophic burn injuries that Faniola suffered when, as she drove on Interstate 40

in Bernalillo County, she suddenly and unexpectedly drove over a piece of roadway debris hazard in

her 1992 Mazda Protege, which Mazda designed and manufactured.  The debris was a semi-truck

brake shoe made of 3/8-inch steel that was approximately 15" long and 9" high, and weighed between

fifteen and twenty pounds.  The debris was so big that the vehicle could not clear it.  She did,

however, see the brake shoe with enough time to assess what was on both sides of her before driving her Protege over the brake shoe while traveling between 55 and 70 miles per hour.

The debris penetrated and tore open the underside of the exposed gas tank, and the vehicle immediately burst into flames.  Faniola alleges that the obstructive passive restraint system, which was an automatic shoulder belt system common in vehicles manufactured in the early 1990's, unreasonably delayed Faniola from exiting the vehicle.  The passive motorized seat belts were one of the systems that federal law allowed manufacturers to choose to install.  An occupant had to disconnect all passive belt systems to cross over to the opposite door to exit.

Once Faniola noticed smoke, but not fire, coming from the back of her vehicle, she pulled to the side of the road, disconnected her own seatbelt, and opened the driver's side door.  The seatbelt worked as expected, but Faniola noticed fire coming from under the car and decided to exit through the passenger door.  She climbed onto the driver seat and stepped over to the passenger seat, stopping to retrieve her purse from the back seat.  After she got her purse, she recognized that, when she opened the passenger door, the shoulder belt would come forward.

Consequently, while standing in the passenger seat, she tried to step in between the seat belt and the seat.  She testified that she became somewhat entangled in the opposite belt before hitting the emergency release button on the shoulder belt.  The emergency release worked as expected, and Faniola then was able to sit down in the passenger seat, push the door open, and run from the car.  Faniola could not remember any smoke or flames in the vehicle during the time she was in the car.

Faniola alleges that this 1992 Mazda Protege included defects in the quality and strength of the fuel tank, defects in the failure to shield and protect the fuel tank from foreseeable road debris hazards, and defects in the passive restraint system.

-2-

## PROCEDURAL HISTORY

Faniola filed her Complaint on August 15, 2002, almost three years after the accident.  She served Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("MNAO") and Ford on August 23, 2002.  She served Mazda on October 11, 2002, over three years after the accident.  MNAO and Ford filed their answers to Faniola's Complaint on October 1, 2002.  Mazda answered on October 30, 2002.  The Court signed the Initial Scheduling Order on November 19, 2002, ordering that "initial disclosure under Fed. R. Civ. P. 26(a)(1) shall be made within 14 days of the meet and confer session."

Faniola's counsel and Mazda's counsel held their meet and confer session on December 11, 2002.  Faniola submitted her initial discovery disclosures -- including medical records, photographs, and other documentation in excess of 600 pages -- to the Defendants on December 18, 2002.  The Defendants provided initial discovery disclosures on February 18, 2002, two months after the deadline in the Initial Scheduling Order.

Mazda attributes some of that delay to Ford's request that Faniola dismiss it from this lawsuit.  Ford's counsel contacted Faniola's counsel and requested a dismissal.  In response, Faniola's counsel wanted information regarding Ford's involvement in the design, manufacture, and testing of the Protege.  Ford contends that it had no involvement with any aspect of the Protege, which Ford's counsel confirmed by letter and later by discovery responses.  Faniola refuses to dismiss Ford on the theory that Ford had a legal duty to inform Mazda of any information that Ford had acquired regarding road debris on United States highways, and any resulting potential for danger based on vehicle design.  Ford states that Mazda is a competitor.

Mazda and MNAO each provided a two-page Initial Disclosure.  Their disclosures did not

provide information different from what was in Faniola's disclosures.  Ford provided a one-page disclosure.

In addition, the Defendants sought a protective order before providing vehicle design documents, including the fuel tank design drawing, fuel tank guard drawing, passive shoulder belt outer, passive shoulder belt inner, manual lap belt outer, and manual belt inner.  Mazda's counsel was preparing for trial and was not able to send a draft protective order to Faniola's counsel for some time.  Faniola's counsel, however, knew about the delay and granted extensions of time to prepare the protective order.

Before sending the protective order, however, the Defendants, on February 26, 2003, sent Faniola 48 interrogatories and 39 requests for production.  Faniola timely answered and responded to Defendants' discovery on March 28, 2003.  Faniola has also complied with the three Defendants' separate requests to re-print 47 photographs; Faniola had originally supplied the photographs with her initial disclosures.

The parties then spent a portion of time negotiating the protective order so that Mazda could produce appropriate design documents.  When the parties filed and signed the order, Mazda immediately provided the design documents.  Subsequently, Mazda also produced a number of crash test videotapes and reports and other documents that Faniola requested in discovery.  The Defendants have produced documents and materials relating to the 1992 Protege, which is the vehicle at issue.

On June 23, 2003, Mazda submitted its Responses to First Set of Request for Production of Documents.  On that same day, Mazda submitted its Answers and Responses to First Set of Interrogatories and Requests for Admission.  Mazda submitted its Supplemental Responses to First Set of Request for Production of Documents on August 6, 2003.  Ford also recently submitted its

Response to First Set of Interrogatories, Requests for Production, and Requests for Admission to Defendant Ford Motor Company.

Faniola contends that, to date, Mazda has not adequately or fully produced much of the information in Faniola's discovery requests.  Faniola maintains that Mazda's conduct is without reasonable justification.   Faniola moves this Court pursuant to rule 37(a)(2) for an order requiring Mazda to produce its answers to her interrogatories and responses to her requests for production. Faniola's counsel certifies that he has, pursuant to rule 37(a)(2), in good faith conferred with Mazda's counsel in an effort to secure this discovery without court action. Faniola does not request the Court to enter the severe default judgment sanction.

Counsel for Mazda indicated at the June 14, 2003 meet and confer session regarding Mazda's discovery responses that he was working with Mazda's in-house counsel, David Orr.   Faniola requests that the Court instruct trial counsel, a member of this bar, to answer the discovery as compelled, regardless of the in-house, non-bar member's instructions.

Mazda has served supplemental answers and responses, but the parties have been unable to informally work out their differences.  Mazda contends that Faniola's motion to compel is based primarily on her desire to learn information from and about Mazda's competitor, Ford.  Mazda contends that Faniola is seeking to take this Court and Mazda along on a very expensive fishing trip in hopes of finding a place to put her very unique case.

Important in the present case is Ford's answers to discovery:

Ford states that the subject vehicle was designed, manufactured, marketed and sold by Mazda Motor corporation . . . .  Ford further states that Mazda was the lead engineering activity for the 1991 through 1996 Ford Escort (CT-20) and 1997 Ford Escort (CT-120) vehicle programs, and as such either designed or supervised the design of those vehicles.  Therefore, Ford

refers Plaintiff to Mazda for the information sought by this request.

Ford Motor Company's Response to First Set of Interrogatories, Requests for Production and Requests for Admission to Defendant Ford Motor Company, Response to Request for Admission No. 1. Ford has thus admitted that Mazda designed and manufactured the Ford Escort. The Ford Escort has a substantially similar, if not identical, fuel tank and fuel system designs that include shielding, which goes to the heart of Faniola's defective products claims in this case.

## LAW ON DISCOVERY

The purpose of discovery under the Federal Rules of Civil Procedure requires the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action is based on a full and accurate understanding of the true facts and thus embody a fair and just result. See United States v. The Proctor & Gamble Co., 356 U.S. 677, 682 (1958); Hickman v. Taylor, 329 U.S. 495, 500-501 (1947). The rules intend that discovery operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion invoking judicial intervention. The rules require that the parties accomplish discovery voluntarily; that is, the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosures.

Counsel's duty is to make a reasonable investigation and certification that responses are correct and complete, and that objections are well-grounded in fact and law and not interposed for delay or other improper purpose. See Fed. R. Civ. P. 26(g).

The scope of discovery extends to "any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The rules expect lawyers to act in good faith, to follow the rules, and to do their duty as

officers of the court seeking truth.  See Peaplastic, C.A. v. Cincinnati Milacron Co., 799 F.2d 1510,

1521-23 (11th Cir.1986); Malautea v. Suzuki Motor Corp., Ltd., 148 F.R.D. 362, 377 (S.D. Ga.

1991)(describing how the court cannot tolerate rampant discovery abuses: "At some point patience

is not virtue.  Justice demands an element of decisiveness."), aff'd, 987 F.2d 1536 (11th Cir.), cert.

denied 510 U.S. 863 (1993).  Counsel bears the obligation under the rules, as officers of the court,

to cooperate with one another so that, in the pursuit of truth, the judicial system operates as intended;

so that neither the Court nor the litigants are put to unnecessary trouble and expense in pursuit of the

truth; and disputes are resolved on their merits as promptly and economically as the circumstances

of the case permit.  Counsel often, however, focus improperly on admissibility rather than relevance

and confine the parameters of what they believe the rules require them to disclose and to produce as

much as they possibly can.  Such conduct frustrates both the spirit and the letter of rule 26(b).

Information regarding other models of a product is generally discoverable as long as the same defect

or component is involved.  See Malautea v. Suzuki Motor Co., Ltd., 148 F.R.D. at 374-76 (imposing

severe sanctions on Suzuki Motor Co., Ltd for failing to comply with court's order compelling the

information about other models and General Motors and its similar model the GEO Tracker).

 A party must disclose information and produce documents and things over which it has the

right of control.  That right exists when a party has a right to obtain the information or document on

demand or where it would ordinarily have access to it in the ordinary course of business.  See Searock

v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984).  Courts have held that the rules require a corporation

to furnish information and documents in the possession of its parent corporations, its corporate

subsidiaries, its sister corporations, and its foreign branches.   See Gerling Int'l Ins. Co. v.

Commissioner of Internal Revenue, 839 F.2d 131, 140-41 (3d Cir. 1988); Camden Iron & Metal, Inc.

v. Marubeni, 138 F.R.D. 438, 442 (D.N.J. 1991); Sunrise Toyota, Ltd. v. Toyota Motor Co., 55 F.R.D. 519, 527-29 (S.D.N.Y. 1972).  A corporation must also furnish information that its corporate counsel and former employees possess.

Counsel must be careful not to make semantic objections that frustrate the purpose of discovery.  A vagueness objection is not available to a party who in fact knows what information or documents the opposing party is requesting.  See generally Chubb Integrated Sys., Ltd. v. National Bank of Washington, 103 F.R.D. 52, later proceeding, 658 F. Supp. 1043 (D.D.C. 1984): Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Pet. Co., 105 F.R.D. 16 (S.D.N.Y. 1984).  In any event, a party objecting on the ground of vagueness should specify what part of the request is vague and why, and should seek clarification.  See Malautea v. Suzuki Motor Corp., Ltd., 148 F.R.D. at 362; Roesberg v. Johns-Mansville Corp., 85 F.R.D. 292, 302 (E.D. Pa. 1980).

The Court has the power to compel Mazda to answer Faniola's discovery.  See Fed. R. Civ. P. 26(g), 33, 34, and 37.  Answers that are evasive, cryptic, or incomplete are not answers.  See Bollard v. Volkswagen of America, Inc., 56 F.R.D. 569, 574-75 (W.D. Mo. 1971); Fed. R. Civ. P. 37(a)(3).  The purpose of discovery requests is to obtain discoverable information, not to provide the respondent and its counsel with the opportunity to see how innovative they can be in failing to respond accurately without committing perjury or otherwise violating the Federal Rules of Civil Procedure.

In Bollard v. Volkswagen of America, Inc., the defendant manufacturer managed discovery through in-house counsel and limited authority given to local trial counsel.  The court in Bollard v. Volkswagen of America, Inc. found that procedure was "obviously . . . calculated to delay and obstruct completion of discovery."  Id. at 578.  The court further held such misconduct warranted

the severe sanction of default judgment because of the "frustration of the judicial process which results when a defendant corporation refuses to give trial counsel the authority [to control discovery]l . . . and attempts to handle matters through house counsel who are either not acquainted with the pretrial rules or not predisposed to obeying them." Id. at 583. See Dean v. A.H. Robins Co., 101 F.R.D. 21, 23 (D. Minn. 1984)(detailing ongoing and prolonged resistance of defendant to discovery and that problems stemmed, in part, from reliance on in-house and other out of state counsel).

## SUMMARY OF INTERROGATORIES AND ANSWERS

Faniola contends that Mazda either overtly failed to answer certain of Faniola's interrogatories or provided such incomplete and evasive answers to her interrogatories that those answers constituted failures to answer. Faniola contends that Mazda failed to answer, or provided such incomplete and evasive answers that they rose to the level of nonanswers to interrogatories 1, 5, 6, 8, 9, 13, 17, 18, 19, 24, and 24(#2). Faniola made an interrogatory numbering error. Thus, the interrogatory that she should have numbered 25, but did not, is referred to herein as 24(#2).

**Interrogatory Number 1**

Faniola requested identification of persons assisting with answers to these interrogatories or of information influencing any answers to these interrogatories. While the Defendants would presumably be at a disadvantage at trying to pull their case together in a few months, Mazda objected to providing any response to this interrogatory: "The 'person's Counsel has most of this information in his own knowledge due to responding over and over to long sets of discovery and has no idea who he talked to at any time in the past for a particular item of knowledge." Mazda appears to be arguing that counsel derives all of this information on his own and that this affects the attorney-client privilege. Mazda makes other objections. Mazda supplemented by stating that Faniola was free to

serve rule 30(b)(6) notices.

Mazda should not refuse to reveal, deny Faniola access to, or give an evasive answer to what Mazda knows to be true.  See Malautea v. Suzuki Motor Co., Ltd., 148 F.R.D. at 373.  Mazda has not identified possibly key witnesses.  Mazda has not identified any of its employees with knowledge relevant to the subject matter of this action or of those employees who were involved in Mazda's decisions regarding the design, manufacturing, assembly, testing, and distribution of the Mazda Protege.  Mazda initially did not identify any employees.  When Faniola confronted Mazda with this failure to identify any employees with knowledge relevant to the subject matter of this action, or who were involved in Mazda's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda instructed Faniola to take corporate depositions pursuant to rule 30(b)(6).  See Mazda's Supplemental Responses to First Set of Interrogatories and Requests for Admissions.

Faniola contends that Mazda's objection is frivolous and exemplifies the lack of reasonable inquiry attendant to this discovery by its counsel.  Mazda's answer is at tension with its contention that it has not had a lawsuit similar to this one.  This answer also is not consistent with counsel's duty to make a reasonable inquiry.  The Court overrules this objection.

Mazda's failures to identify employees could place Faniola at a disadvantage in terms of discovery time lines.  This refusal to identify potential witnesses violates rule 26(a)(1)(A), which allows discovery of "the identity and location of persons having knowledge of any discoverable matter."  The rule requires disclosure of the identity of persons with discoverable information. Faniola is entitled to this information.

Mazda states that it can identify knowledgeable persons on relevant issues after Faniola notices a rule 30(b)(6) depositions.  This response does not have reasonable justification under the

rules of discovery.  Interrogatories and requests for production are a usual and customary means by which parties may determine the identity of knowledgeable employees of a corporation and other third parties from which the requesting party may then make an informal decision to depose that or those persons.

The Court will order Mazda to produce all requested information, including that about other lawsuits.  Counsel will not rely solely on prior work in other cases or his unaided recollection, but will conduct a reasonable search for the requested information.  In responding to this interrogatory, as well as Interrogatory Numbers 5, 13, 17, 18, 19, and 24(#2), Mazda shall state in its answer that it is providing a list of individuals that meet the following discovery standard: it has conducted a thorough, diligent, and good faith inquiry concerning the knowledge (including the historic knowledge) of Mazda and its employees and the products and parts and all related products and parts, including those related to the Ford Escort, involved in this action.

**Interrogatory Number 5**

Faniola requested a description and identification of any tests to evaluate Mazda Protege fuel tank penetrations.  Mazda described generalized testing not impacting fuel tank penetration, contending that they did not understand what "penetration of fuel tank" meant.  Mazda stated that this interrogatory was overly broad and unduly burdensome.

Mazda supplemented by stating, without reference to a specific deadline, test results relating to fuel tank leakage.  Also, when Faniola confronted Mazda about its failure to identify any employees with knowledge relevant to the subject matter of this action, or who were involved in the defendant's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda instructed Faniola to take corporate depositions pursuant to rule 30(b)(6).

Mazda has not produced documents relating to inspections, examinations, and tests, and objects to this interrogatory. Mazda avoids disclosing information by arguing about the meaning of ordinary words. Mazda states that they "did not retain the results of any of those [fuel tank] tests." Such tests and information relating to such tests in a case like this one come within the rule 26(b)'s discovery confines.

Mazda then does not answer this general question by narrowing the question. Fuel tank and passive restraint information is discoverable whether it is admissible or not. The information may lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b); id. 404(b). Faniola implicated Mazda's fuel tank and passive restraint systems in her defective product negligence causes of action.

Mazda has objected because it does not understand at least some of this interrogatory. Mazda should have sought clarification from Faniola. Mazda did not do so. This objection lacks a sound basis. Mazda's objection of ambiguity or vagueness frustrates discovery.

The Court will overrule Mazda's objections and order Mazda to respond in regard to these tests even if it may not have retained these tests. To satisfy this discovery, Mazda may need to add persons who may testify about these tests to their witness disclosures. Mazda shall produce information for both penetration and spearing or collision cases. Insofar as Mazda contends that it has already produced responsive documents, the Court will order Mazda to list such documents and identify to what question the documents are responsive.[1]

---

[1] The Court initially awarded Faniola reasonable attorney fees related to Interrogatory Numbers 5 and 6. See Transcript of Hearing at 7, line 24 to 8, line 1; 11, lines 13 to 15. At the end of the hearing on this matter, the Court reconsidered and determined that it would not award fees on either interrogatory. See id. at 101, line 25 to 104, line 8.

**Interrogatory Number 6**

Faniola requested results of testing identified in Interrogatory Number 5. Mazda described general compliance with federal safety standards, but objected to Faniola's use of the term "penetration resistance" and made other objections. Mazda supplemented by stating, without reference to a specific deadline, that it will produce test results relating to fuel tank leakage.

Mazda has refused to produce documents relating to inspections, examinations, and tests, and objected to this interrogatory that relates to product inspections, examinations, and tests. Mazda has objected because it does not understand at least some of this interrogatory. Mazda avoids disclosing information by arguing about the meaning of ordinary words. Mazda then did not answer this general question and, instead, attempted to narrow its scope. Mazda should have, instead, sought clarification from Faniola. Mazda's objection lacks a sound basis.

The Court will overrule Mazda's objection to the phrase "penetration resistance" because it finds that phrase sufficiently clear. As with Interrogatory Number 5, Mazda shall produce information regarding testing related to both penetration and spearing or collision cases.

**Interrogatory Number 8**

Faniola attaches to her discovery requests an exhibit (Exhibit 1) and requests that Mazda answer questions pertaining to the exhibit. At the time Faniola served the discovery requests, Faniola provided no explanation regarding the drawing depicted in Exhibit 1. The drawing is not a design drawing and has no identifying information, and someone has altered the drawing in that he or she placed a circle around one part and drew other items on the exhibit. Subsequently, Faniola's counsel informed Mazda that the drawing came from a "parts house in Jackson, Wyoming" and was a "diagram for a Ford Escort fuel system." Thus, the fuel tank system depicted in Exhibit 1 is not from

-13-

a 1992 Mazda Protege.  Counsel had no explanation for the alterations, but Mazda accepted counsel's word that he did not make the alterations to the exhibit.

In this interrogatory, Faniola requests the complete factual basis for the denial or qualification of the request for admission immediately preceding relating to Exhibit 1.  Faniola believes that the fuel tank depicted in Exhibit 1 is the same as, or substantially similar to, the fuel tank on the 1992 Mazda Protege that is the subject vehicle in this case.  Faniola maintains that the parts diagram is for a substantially identical Ford Escort, which Mazda designs and manufactures.  Ford has admitted that Mazda designed, engineered, and manufactured the Ford Escort.  See Request for Admission Number 1.  This admission is important, because the Ford Escort fuel tank design includes a shield over the fuel tank.  The Mazda Protege does not include a shield.

Because Mazda denies this Request for Admission, Faniola proposes in Interrogatory Number 8 to ask for the factual bases of such denial.

With the information that the drawing came from a parts house in Jackson, Wyoming, Mazda informed Faniola that the fuel systems for the Protege and the Escort are different.  The Protege uses a metal fuel tank with one heat insulator, to which Faniola refers as a "shield."  It is located where the exhaust system nears the tank.  The Escort uses a plastic fuel tank with two heat insulators.

Faniola requested information explaining why Mazda did not install the fuel tank shield depicted in the Ford Escort parts diagram in the Mazda Protege.  Ford installed identical fuel tanks in Ford Escorts during that production period.

Mazda implicated Faniola's counsel with tampering with the document.  Mazda also objected on several grounds.  Mazda supplemented by admitting that no one had tampered with the document but did not answer the interrogatory.  Mazda stated that the questions related to the Ford Escort and

are thus not relevant.

Based on the information that Ford has provided, Mazda cannot assert that it had nothing to do with the Ford Escort, as Mazda suggests in its answer to Interrogatory Number 1.  Mazda has incorrectly focuses on admissibility rather than relevance.  Mazda understates the possible important connection between Ford and its Escort automobile and its parts.  Mazda, in its supplemental answer to Interrogatory Number 8, does not respond to the interrogatory because it states that questions as to Ford are not relevant.  See Mazda's Supplemental Response to Interrogatory 8.

Because the Court finds that information related to the Ford Escort vehicle is relevant, the Court overrules Mazda's objections on that basis.  Mazda shall amend its answer to Interrogatory 8 and produce information responsive to this Interrogatory.

**Interrogatory Number 9**

Faniola requested explanations why Mazda did not incorporate and assemble the shield depicted in Exhibit 1 on the 1992 Mazda Protege.  Mazda's answer did not respond to this interrogatory.  Mazda objected on the grounds that Faniola's counsel tampered with the document and also objected on other grounds.

Mazda supplemented by admitting that Faniola had not tampered with the document, but did not answer the interrogatory.  Mazda stated that the questions related to the Ford Escort and are thus not relevant.

Based on the information that Ford has produced, Mazda cannot assert that it had nothing to do with the Ford Escort, as it does in its answer to Interrogatory Number 9.  Mazda, in its supplemental answer to Interrogatory Number 9, does not respond the interrogatory because it states that questions as to Ford are not relevant.  See Mazda's Supplemental Response to Interrogatory 9.

Mazda does not answer this interrogatory.

The Court will order Mazda to produce the requested answer to Interrogatory Number 9 and overrule Mazda's contention that Ford and the Ford Escort have nothing to do with this case. That contention does not have a basis in fact.

**Interrogatory Number 13**

Faniola asked for information about all Mazda-designed components used in the Ford Escort for years 1991, 1992, and 1993. Mazda objected to being asked about a Ford Escort and also stated other objections. Mazda supplemented by stating that Mazda designed the Ford Escort using parts manufactured on its own and parts manufactured by others. When Faniola confronted Mazda about its refusal to identify employees with knowledge relevant to the subject matter of this action, or who were involved in Mazda's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda instructed Faniola to take corporate depositions pursuant to rule 30(b)(6).

Based on the information that Ford has supplied, Mazda cannot assert that it had nothing to do with the Ford Escort, as Mazda's answer suggests. This answer does not respond to Faniola's question. The answer does not provide any information that Faniola could not have guessed at on her own.

Mazda objects that it does not understand at least a portion of this interrogatory. Mazda should have sought clarification from Faniola, but did not. Mazda's objection does not have a sound basis.

The Court will order Mazda to produce the requested answer to Interrogatory Number 13 and will overrule Mazda's contention that Ford and the Ford Escort has nothing to do with this case. That contention does not have a basis in fact. The Court will also order Mazda to certify that it has

conducted a good faith inquiry into information responsive to Interrogatory 13.  The Court will not grant attorney fees with regard to Interrogatory 13.

**Interrogatory Number 17**

Faniola asked for identification of persons in charge of Mazda's safety program, "i.e., the person(s) who decided what safety tests were to be run to evaluate safety performance of the fuel system, including, but not limited to, the fuel tank and the occupant restraint system assembled in the 1992 Mazda Protege."  Mazda objected by stating that safety is involved in everything, but that it has a "Vehicle Testing and Research Department."  Mazda also objected that no one was "in charge of" such department because of Japanese managerial nomenclature differences.

Mazda also stated that the interrogatory is overly broad.  When Faniola confronted Mazda about its refusal to identify employees with knowledge relevant to the subject matter of this action, or who were involved in Mazda's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda supplemented by stating that Faniola was free to make rule 30(b)(6) notices.

Mazda has objected on the ground that it does not understand at least a portion of this interrogatory.  Mazda should have sought clarification from Faniola, but did not.  Mazda's objection lacks a sound basis.

The Court will overrule Mazda's objections.  Mazda shall amend its answer to Interrogatory 17 and provide the appropriate names.  To the extent that Mazda uses different nomenclature regarding persons with oversight responsibilities, the Court directs Mazda to use a common sense approach in responding and to identify those persons with oversight responsibilities by name, explain their role and provide a due diligence certification.

**Interrogatory Number 18**

Faniola requested identification of persons responsible for designing the fuel system, including "the fuel tank" for the vehicle that is the subject of this lawsuit.  Mazda identified its "Vehicle Engineering Dept." and objected that "responsible for" was vague and ambiguous and overly broad. When Faniola confronted Mazda about its refusal to identify employees with knowledge relevant to the subject matter of this action, or who were involved in Mazda's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda supplemented by stating that Faniola was free to serve rule 30(b)(6) notices.

The Court overrules Mazda's objections and compels Mazda to provide a complete response to Interrogatory 18, including names of all relevant persons and an explanation of their role.  Mazda shall also provide a due diligence certification that it conducted a good faith inquiry.

**Interrogatory Number 19**

Faniola requested identification of persons responsible for designing the fuel tank and component parts depicted in the Ford Escort fuel tank system diagram.  Mazda did not answer, but objected on the grounds that Faniola's counsel tampered with the document.  Mazda also objected on other grounds.

Mazda supplemented by admitting that Faniola's counsel had not tampered with the document, but did not answer the interrogatory.  Mazda stated that the questions related to the Ford Escort and are thus not relevant.  When Faniola confronted Mazda about its refusal to identify employees with knowledge relevant to the subject matter of this action, or who were involved in Mazda's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda instructed Faniola to take corporate depositions pursuant to rule 30(b)(6).   <u>See</u> Mazda's

Supplemental Response to Interrogatory 19.

Mazda, in its supplemental answer to Interrogatory Number 19, does not respond to the interrogatory because it states that questions as to Ford are not relevant.  See id. Based on the information that Ford has supplied, Mazda cannot assert that it had nothing to do with the Ford Escort, as its answer to Interrogatory Number 19 suggests.

Mazda has continued to refuse to identify these persons.  Faniola's counsel has had meet and confer sessions with Mazda's counsel.  The identity of key Mazda design personnel could be essential to Faniola's case.  The Court will order Mazda to produce the requested answers to Interrogatory Number 19 and overrule Mazda's contention that Ford and the Ford Escort have nothing to do with this case.

**Interrogatory Number 24**

Faniola requested identification of Mazda's officers, directors, and employees who served on the Board of Directors of Ford Motor Company for years 1991 to present.  Mazda objected on vagueness grounds, because it is a Japanese corporation, which uses different terminology than "officers."  Mazda also made other objections.  Mazda supplemented by answering only to the current time frame and further objected to any implication of a connection between itself and Ford.

Based on the information that Ford has supplied, Mazda cannot assert that it had nothing to do with the Ford Escort, as Mazda's answer to Interrogatory Number 24 suggests.  The Court will order Mazda to produce the requested answers to Interrogatory Number 24 and overrule Mazda's contention that Ford and the Ford Escort have nothing to do with this case.  That contention has no basis in fact.  To the extent that Mazda uses different nomenclature to identify "officers," the Court directs Mazda to use a common sense approach in conducting a good faith inquiry and responding

fully to this interrogatory.

**Interrogatory Number 24(#2)**

Faniola requested identification of Mazda's employees, agents, or contractors involved in the design of the Ford Escort. Mazda objected on several grounds. When Faniola confronted Mazda with its refusal to identify any employees with knowledge relevant to the subject matter of this action, or who were involved in Mazda's decisions regarding the design, manufacturing, or testing of the Mazda Protege, Mazda supplemented by stating that Faniola was free to serve rule 30(b)(6) notices. See Mazda's Supplemental Response to Interrogatory 24(#2).

The Court will overrule Mazda's objections. It was Mazda's obligation to demonstrate that this Interrogatory is unduly burdensome, and Mazda failed to meet this burden. The Court will, therefore, order Mazda to provide a complete response to Interrogatory 24(#2).

## REQUESTS FOR PRODUCTION AND RESPONSES

Faniola contends that Mazda has overtly failed to produce information responsive to certain requests for production and provided such incomplete and evasive production responses to others that they constitute failures to produce. Faniola contends that Mazda failed to respond, or provided such incomplete and evasive responses that they rise to the level of nonresponses to the following requests for production: 3, 6, 8, 10, 11, and 17.

**Request for Production Number 3**

Faniola requested Mazda's information related to vehicle safety. Specifically, Faniola sought "all engineering or corporate statements, definitions, procedures, practices and policies related to vehicle safety and the treatment of critical vehicle components and systems." Faniola did not limit the request by time, vehicle, or vehicle system.

Mazda objected to the request as over broad and unduly burdensome.  Specifically, Mazda responded:

> Subject to the objections below, this Defendant has no idea what document Plaintiff has in mind here.  Virtually every vehicle part has a safety consequence.  If Plaintiff would identify a pertinent part that she is interested in, the design drawing will be offered pursuant to the protective order.
>
> Defendant objects to this Request for Production on the grounds that it is vague and ambiguous as to what Plaintiff has in mind – if some sort of safety policy manual, Defendant does not separate that critical element from the design process; if seeking every aspect of a vehicle's design that involves a safety aspect, this request is woefully overly broad and unduly burdensome.

Mazda supplemented with a quotation of its "Quality Policy": "Enrich the lives of our customers by providing products and services that reflect steady and uncompromising work."

There is no "boilerplate" or "cut and paste" objection to this request.  Conceivably every part of every vehicle has a "safety" component, and Mazda could read this request to seek information relating to everything from the wiring on the radio of the 1982 Mazda GLC to the rubber used on windshield wipers on the new 2003  Mazda 6.  Faniola's request could be read as overly broad, and, if that is what she is requesting, Mazda's specific objection would be appropriate.

Mazda objects that it does not understand at least a portion of Request for Production Number 3.  Mazda should have sought clarification from Faniola, but did not do so.  Mazda's objection does not have a sound basis.

The Court will overrule Mazda's objections, but will limit the scope of this request to the two systems at issue: fuel tank and passive safety restraint.  Mazda shall amend its answer and provide Faniola with responsive documents including all those vehicle safety related documents that Mazda in good faith determines encompass the fuel tank and passive safety restraint systems of the Mazda

Protege for the time period 1990 - 1994.  See Transcript of Hearing at 35, line 6 to 39, line 18.

**Request for Production Number 6**

Faniola requested Mazda Uniform Test Specifications pertaining to the fuel tank and its components, and to the passive restraint system and its components, for both Mazda and Ford vehicles.  Mazda stated that it did not retain such a document and that "the reference to Ford vehicles is mystifying."  Mazda objected to the interrogatory as vague and ambiguous as to Ford vehicles and "Uniform Test Specifications," and also as over broad and unduly burdensome.

Mazda objects that it does not understand at least a portion of Request for Production Number 6.  Mazda should have sought clarification from Faniola, but did not do so.  Mazda's objection does not have a sound basis.

The Court will overrule Mazda's objections and require Mazda to supplement its answer taking into account that its objections are overruled.  Mazda shall provide responsive documents or certify that it has none.

**Request for Production Number 8**

Faniola requested parts catalog and manual type information for the fuel tank and its components, and for the passive restraint system and its components.  Mazda responded, without reference to a specific date, that it would make this information available, and then objected on grounds that the request is ambiguous and unduly burdensome.  Mazda supplemented by limiting the request to "relevant portions" of the 1992 Mazda Protege Owner's Manual information.

Based on Mr Wallin's letter of July 7, 2003, it appears that Mazda has sufficiently responded to this request.  The Court notes that, at the hearing on this matter, Mazda agreed to order the owner's manual for the vehicle at issue, and Faniola will cover the cost of that manual.  See

Transcript of Hearing at 42, lines 1 to 12.  The Court will deny the motion as to this request, finding it moot.

**Request for Production Number 10**

Faniola requested test information and videotapes for fuel tank and component parts and passive restraint and component parts installed on a 1992 Mazda Protege or similar vehicle.  Mazda limited the request and then stated objections.  Specifically, Mazda objected to the breadth of the request because it was not limited to tank spearing penetration that occurred in this case.

The Court will overrule Mazda's objections and require Mazda to supplement its response taking into account that its objections are overruled.  Mazda's response shall include information related to testing on penetration and spearing or collision crashes.

**Request for Production Number 11**

Faniola requested quality control information for the fuel tank and its components, and for the passive restraint and its components.  Mazda limited the scope of the request and attempted to eliminate one of Faniola's causes of action regarding manufacture of the vehicle's fuel tank and passive restraint system.  Mazda also stated that the interrogatory was vague.  Mazda supplemented by stating that no documents responsive to this request were in its possession.

Mazda objects that it does not understand at least a portion of Request for Production Number 11.  Mazda should have sought clarification from Faniola, but did not do so.  Mazda's objection does not have a sound basis.

The Court will overrule Mazda's objections and require Mazda to supplement its response taking into account that its objections are overruled.  If no responsive documents exist, Mazda shall so state.

-23-

**Request for Production Number 17**

Faniola requested the Mazda Vehicle Safety Handbook for the 1992 Mazda Protege distributed in both the United States and in Japan.  Mazda responded by stating that it had no book with such a title in its possession and then objected on vagueness grounds.  Mazda objects that it does not understand at least a portion of Request for Production Number 17.  Mazda supplemented by stating that it would produce portions of the Owner's Manual.

The Court finds that Mazda's response to this request is sufficient and denies Faniola's motion with respect to Request For Production 17.

## OBJECTIONS

Faniola complains about Mazda making frivolous, boilerplate objections.  Specifically, Faniola complains that Mazda's answers and responses to her Interrogatories and Requests for Production consist mainly of unnecessary, rote objections, blanket claims of privilege, and refusal to produce documents.  Mazda objects to the scope of Faniola's discovery requests, contending that the requests are too vague.  Faniola points out that she furnished a table of definitions with the requests.

Faniola complains that many of Mazda's responses contain vague objections that obfuscate the answer.  See Interrogatory Numbers 5, 6, 8, 9, 13, 17, 18, 19, 24, and 24(#2); Request for Production Numbers 3, 6, 8, 10, 11, and 17.  Some of the objections do not match the interrogatory, but match the previous interrogatory.  See, e.g., Interrogatory Number 12, Supplemental Answer (Interrogatory 11 asked regarding fuel systems; Interrogatory 12 asked regarding passive restraints, but the objection referred to fuel systems).

Faniola complains this tactic of answering subject to objection allows Mazda to use the objection to conceal the incompleteness of the response instead of directly stating that the response

-24-

is incomplete or explicitly explaining why the privilege exists.  Faniola also complains that Mazda makes objections and responses without first making reasonable inquiry.

The Court declines to make a general ruling.  The Court has already dealt with the specific objections as they related to each discovery request.  The Court overruled many objections, and those rulings are noted above.

## DOCUMENT RETENTION POLICIES

Faniola also requests that the Court order Mazda to produce its document retention policies for the years 1990 to present to facilitate determining whether Mazda's answers and supplemental answers indicating an inability to find many of the documents that Faniola requested have a basis in fact.  Without these policies, Faniola may be unable to determine whether Mazda is acting in good faith.

The Court will not, at this stage, order Mazda to produce its document retention policies. Faniola did not specifically request them in her written requests.  The Court will note, however, that should Faniola formally request these documents and thus bring a motion to compel document retention policies specifically related to the two systems at issue -- the fuel tank system and/or the passive safety restraint system -- the Court would be inclined to grant such a motion at that stage.

## SANCTIONS

The Court has the power to sanction Mazda for incomplete, evasive responses to discovery requests.  See Fed. R. Civ. P. 26(g), 33, 34, and 37.  While the Court has generally granted this Motion to Compel with regard to most of the discovery requests at issue, for one reason or another on each request the Court did not find Mazda's position lacked any basis.  The Court declines to enter sanctions against Mazda related to this Motion.

## **DAVID ORR**

Faniola requests the Court's assistance to prevent Orr's ghost writing from interfering with her discovery.  Faniola does not support that local counsel is a pawn for MC's in-house counsel. Mazda's counsel supplied much of the information relating to the discovery requests and facilitated production of the information given to Faniola's counsel months ago.  Clients generally are so involved.  The Court does not see anything unusual about Mr. Orr's involvement and will not interfere with how this client responds to its local counsel's requests for information.

**IT IS ORDERED**  that the Plaintiff's Motion to Compel is granted in part and denied in part. Mazda Motor Corporation is ordered to provide immediate, full, and complete answers to Faniola's interrogatories and the information that falls within the scope of Faniola's requests for production consistent with this opinion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Roy A. Jacobson, Jr.
J. Douglas McCalla
Larissa A. Ferullo
SPENCE, MORIARITY & SHOCKEY, LLC
Jackson, Wyoming

Dennis K. Wallin
LAW OFFICES OF DENNIS K. WALLIN, PC
Moriarty, New Mexico
     *Attorneys for Plaintiff Michelle Faniola*


Jeffrey M. Croasdell
RODEY DICKASON SLOAN AKIN & ROBB, PA
Albuquerque, New Mexico
     *Attorney for Defendant Mazda Motor Corporation*