IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE FANIOLA, individually and
as the parent and natural guardian of
MATTHEW HART, a minor child,

      Plaintiffs,

vs. No. CIV-02-1011
JB/RLP

MAZDA MOTOR CORPORATION, a foreign
corporation, MAZDA MOTOR OF AMERICA,
a California corporation, and FORD MOTOR
COMPANY, a Michigan corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Third Motion to Compel Discovery, filed March 9, 2004 (Doc. 80). The primary issue is whether the Defendant Ford Motor Company failed to provide an adequate corporate representative for discovery pursuant to rule 30(b)(6) of the Federal Rules of Civil Procedure. After the Plaintiff, Michelle Faniola, filed this motion, but before the Court heard or decided this motion, the Court granted Ford's motion for summary judgment and dismissed Ford from this case. See Order, filed March 23, 2004 (Doc. 88). Because the Court has dismissed Defendant Ford Motor Company ("Ford") from this case, this motion is moot and the Court will thus deny the motion. Further, even if the Court had not dismissed Ford from the case, the transcript excerpts provided to the Court suggest that Ford's rule 30(b)(6) witness sufficiently responded to Faniola's requests. The Court will, therefore, deny Plaintiff Michelle Faniola's third motion to compel.

## **PROCEDURAL BACKGROUND**

Ford did not seek a protective order. Instead, Ford produced one witness, Phillip Beuckelaere, to testify regarding the multiple areas of inquiry that Faniola provided in the Notice. At the deposition, defense counsel did not object to the specified areas of inquiry.

Faniola has no complaints about Beuckelaere's testimony in response to eleven of the fourteen categories listed in the Second Amended Notice to Take Deposition Duces Tecum Pursuant to Rule 30(b)(6). Rather, Faniola argues that Ford did not provide a corporate representative to testify regarding the three areas designated in the Notice. Faniola contends that the corporate representative was unable to answer questions in three areas and testified that he had made little or no effort to prepare himself regarding the corporation's collective information on the matters requested in the Notice. Faniola maintains that Ford thus did not provide an appropriate corporate representative.

Beuckelaere testified that the only documents he reviewed were those documents that Ford's lawyers provided in this case. He spent a limited amount of time preparing:

Q. And how much time have you spent with the lawyers for Ford in this case, preparing?

A. Just – well, I came in yesterday and met with Jeff for a few hours yesterday afternoon. And then prior to that, we had a couple of phone calls.

Q. Has Mr. Orr been present during any of those meetings or phone calls?

A. The meeting yesterday, yes.

Q. Have you reviewed any written discovery other than Ford's Interrogatories and Request for Production?

A. No, I have not.

Q. Have you consulted with anyone regarding the history of Ford and Mazda with respect to business relationships together, projects together, ownership or

> management issues between Ford and Mazda –
>
> MR. CROASDELL: Object to form, compound.
>
> Q. (By Mr. Jacobson) – issue such as that?
>
> A. Other than answering the questions in the discovery requests, no, I have not.
>
> Q. So you made no effort to consult with anyone at Ford that had a more complete and fuller understanding of the history between Ford and Mazda than what you have?
>
> A. No.
>
> Q. So you didn't make that effort; is that correct?
>
> A. That's correct.

Deposition of Phillip Beuckelaere at 84-85 (taken February 3, 2004).

On March 9, 2004, Faniola submitted a letter to the Court regarding Ford's Rule 30(b)(6) witness. The Court filed the letter as a "Motion by plaintiff to compel Rule 30 discovery." (Doc. 80). Faniola requests that the Court direct Ford to comply with rule 30(b) and to direct Ford to provide a corporate representative capable of testifying to the areas in the Second Amended Notice to Take Video Deposition Duces Tecum Pursuant to Rule 30(b)(6) ("Notice").

Faniola contends that Ford did not prepare the representative to testify as to Ford's collective information on the matters requested in the Notice. Faniola also argues that, despite the Court's previous rulings, Ford continues to improperly limit discovery in violation of the Federal Rules of Evidence. Faniola contends that Ford premeditated its disregard of certain aspects of her Notice, and coupled with Beuckelaere's contemporaneous disregard of matters in Faniola's Notice, the deposition evidences Ford's discovery failures in this case.

## LAW ON RULE 30(B)(6) DEPOSITIONS

A court has wide discretion to supervise discovery and to sanction discovery abuses. See Fed. R. Civ. P. 26, 37. An organization must identify and designate one or more people necessary to satisfy each listed subject area in a rule 30(b)(6) notice. See Reilly v. NatWest Mkts. Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999); Poole ex rel. Elliot v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000); Fed. R. Civ. P. 30(b)(6). The person that the corporation designates must testify to the corporation's knowledge, not the individual's. See Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., 201 F.R.D. 33, 37 (D. Mass 2001); Poole ex rel. Elliot v. Textron, Inc., 192 F.R.D. at 504.

The purpose behind designating a corporate representative is to prevent "bandying," which is the practice of presenting employees for their depositions who disclaim knowledge of facts known by other individuals within the organization. See Hooker v. Norfolk So. Ry. Co., 204 F.R.D. 124, 126 (S.D. Ind. 2001). A court may sanction a corporation that refuses to designate a person or when a corporation designates someone without knowledge of the matters about which the organization is to testify. See Resolution Trust Corp v. Southern Union Co., 985 F.2d 196, 197 (5th Cir. 1993).

A corporation must prepare its designated representative to provide complete, knowledgeable, and binding answers on the corporation's behalf. See Poole ex rel. Elliot v. Textron, Inc., 192 F.R.D. at 504; SEC v. Morelli, 143 F.R.D. 42, 44 (S.D. N.Y. 1992). The corporate representative must be able to testify about facts within the corporation's knowledge and its subjective beliefs and opinions. See Paul Revere Life Ins. Co. v. Jafari, 206 F.R.D. 126, 127 (D. Md. 2002). The corporate representative must review corporate documentation that has a bearing on the deposition topics. See Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 639 (D. Minn. 2000); See Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., 201 F.R.D. at 37 (holding that a corporation must

prepare a deponent by having the person review prior fact witness testimony as well as documents).

## **LEGAL ANALYSIS**

### A. PARAGRAPHS 2 AND 5

Faniola's Notice requested:

2. The relationship between Ford Motor Company and Mazda Motor Company as of the date of the manufacture of the 1992 Mazda Protege herein through the present, including, but not limited to, the officers, directors and employees of Ford Motor Company on the Board of Directors of Mazda Motor Corporation, and the officers, directors and employees of Mazda Motor Corporation on the Board of Directors of Ford Motor Company.

\* \* \* \* \*

5. All agreements, written or oral between Ford Motor Company and Mazda Motor Corporation, relating to the design, engineering, development, certification, manufacturing, and distribution of Ford and Mazda Motor Vehicles, including, but not limited to the Mazda Protege and Ford Escort.

Notice ¶¶ 2, 5, at 2, 3. The subject matter of paragraphs 2 and 5 go to Faniola's theory that there was a sufficient relationship between Ford and Mazda Motor Corporation ("MC") such that Ford could be said to be in control of MC. On March 22, 2004, the Court granted Ford's motion for summary judgment.

In response to Ford's motion for summary judgment, Faniola did not present evidence that would require the Court to ignore MC's corporate structure. Accordingly, Ford's alleged control over MC is immaterial to the remaining issues in this case. Ford's alleged control over MC is not relevant to the question whether Ford should be held liable in this matter. Faniola's motion on paragraphs 2 and 5 is thus moot.

Even if the Court were to address the question that Faniola presents, Faniola cannot complain about the discovery that she received. Paragraph 2 of Faniola's Notice requested information about

the relationship between Ford and MC. Faniola contends that, in the 30(b)(6) deposition, when asked about joint agreements between Ford and MC to engineer, design, manufacture or distribute automobiles, Beuckelaere testified that he had no information and that he did not check with anyone within Ford regarding this area. But Faniola does not cite to any part of Beuckelaere's deposition where he stated that he did not have knowledge of the relationship.

In fact, Ford represents that Beuckelaere discussed the working relationship between Ford and MC as to the production of the Ford Escort. He also discussed his own relationship with a Ford employee, Kath, who became a MC Board member. Further, before Beuckelaere's deposition, Ford and MC provided Faniola with information regarding the relationship between Ford and MC, including the history of the relationship, the percentage of ownership, meetings between the companies, and respective boards of directors. Faniola did not address this information with Beuckelaere. The Court will not order Ford to provide Faniola another opportunity to ask Ford questions about topics that she did not address at Beuckelaere's deposition.

Ford was not responsive to some of Faniola's requests. When asked about the Escort joint venture agreement that the Defendants produced under seal in this case, he responded that he "had no firsthand knowledge of that agreement." Beuckelaere Depo. at 43:25 - 44:1. He could not tell Faniola who at Ford may have such knowledge. See id. at 44:2-3. Despite his work in the areas relevant to Faniola's Notice, Ford's corporate representative proved nonresponsive in some areas because of his lack of preparation and participation. While it may have been fair to ask the questions to which Beuckelaere was nonresponsive, the Court does not believe that such questions fall squarely within the scope of paragraphs 2 and 5 of the Notice.

The materials that Faniola provided to the Court show that Beuckelaere had reviewed the

CT20 agreement. See Beuckelaere Depo. at 42. Although Faniola is correct that the witness did not have any firsthand knowledge of the agreement, Faniola does not cite, and the Court has not found any case law requiring that the witness have such knowledge. In fact, the Court has found some support that first-hand knowledge is not required. See S.E.C. v. Morelli, 143 F.R.D. 42, (S.D.N.Y. 1992)(holding that first-hand knowledge and involvement in underlying transaction is not required by rule 30(b)(6)). It is sufficient that he know enough about the agreement to answer Faniola's questions. Beuckelaere was able to fully answer questions regarding the working relationship between Ford and MC on the design and development of the Ford Escort, and he cited parts of the agreement to identify the parties' responsibilities. See id. at 44-45. Thus, Faniola had an adequate opportunity to ask Ford's corporate representative about the only agreement with relevance to this issue.

Paragraph 5 pertains to agreements between Ford and MC to develop vehicles. On this topic, Faniola previously had sought this broad discovery from both Ford and MC. Ford responded to Faniola's request by identifying the CT20 (Escort) agreement and objecting to producing any other agreement. See Defendant Ford Motor Company's Answers to Second Set of Interrogatories, Requests for Production and Requests for Admission, Interrogatory No.15. Faniola did not compel any different response or move to have Ford's objection overruled.

MC responded by producing the CT-20 agreement. When Faniola sought an order from the Court compelling more agreements from MC, the Court denied Faniola's attempt and limited "the scope of this interrogatory to the Mazda Protege for the time period of 1990 to 1994." Order, filed December 24, 2003 (Doc. 64)(addressing Plaintiff's Second Motion to Compel Discovery, filed November 4, 2003 (Doc. 55)).

Despite the Court's previous ruling on a similar issue for MC and despite not objecting to Ford's response to a similar discovery request, Faniola again made a broad request in her rule 30(b)(6) notice. Ford justifiably presumed its original objection to be valid. The Court will deny Faniola's motion to seek information she should have sought earlier.

**B.  PARAGRAPH 7**

Faniola's Notice requested: "Any claims made, complaints, notices or lawsuits regarding any alleged failure, manufacture, defect, malfunction, design, defect or shortcoming in the fuel tank which would cause a fire hazard or fuel leakage in any Ford vehicle, including but not limited to, the Ford Escort." Notice ¶ 7, at 3. In the 30(b)(6) deposition, when asked about claims, complaints, notices or lawsuits about fuel tanks or fuel fires, Beuckelaere testified about one case in which he had given a deposition, see Beuckelaere Depo. at 63:22-24, but other than that particular case, he said: "I don't know." Id. at 63:13-18. When questioned about a particular case, he testified:

> Q. We have been provided a list of Escort/Tracer Related Fuel Cases. I presume you assisted in compiling that information?
>
> A. Well, I – yeah, our legal department compiled that information.
>
> Q. Okay. I don't have it in front of me now. You have my only copy.
>
> A. Uh-huh.
>
> Q. But can you just take it case by case – oh, here I have one. The Aycock– first of all, are these all legal actions that have been – one says "suit," so I assume those are – at one time were filed lawsuits, correct?
>
> A. Correct.
>
> Q. And then what does the "Type Claim" mean?
>
> A. It would be a non-litigated claim.

> Q. All right. So, tell me what information you have about the Aycock claim arising out of the Escort, '94 Escort? What was the nature of the claim?
>
> A. I don't know that.
>
> Q. Do you have any information as to the nature or – the nature of any of these claims or allegations?
>
> A. No, I don't.
>
> Q. Do you know if any of them involve allegations relating to the fuel tank of the Escort?
>
> A. No, I don't.
>
> Q. So I have to go to legal to get this information, or you have to go to legal to get this information?
>
> A. Right.

Beuckelaere Depo. at 188-89.

Beuckelaere conducted a cursory inquiry into cases in the company "Legal Matters Management System." Id. at 199:16-24. He looked in the computer program for descriptions of the cases, but did not find any. See id. at 200:19-22. When asked whether he asked the legal department about this absence, he said: "No, I did not." Id. at 200:23-25.

Faniola's primary complaint with regard to paragraph 7 is that Beuckelaere was not fully conversant about a list of lawsuits and claims that Ford had produced. Faniola has not shown that this information is relevant; she has not shown how notices to Ford about claims involving an Escort plastic fuel tank touch upon any issue of notice to MC about the metal fuel tank on the Protege. Further, the Court previously had limited Faniola's request to the 1991-1997 Ford Escort. In response to the Court's order, Ford produced a list of claims pertaining to claims made against Ford regarding the fuel tank on the Ford Escort.

The list that Ford provided to Faniola six weeks in advance of Beuckelaere's deposition contained the file name, jurisdiction, court, docket number, accident date, service date, file status (e.g., open or closed), model, and model year of the vehicle. Ford provided this information so that Faniola could obtain the relevant facts about each file from the appropriate court or counsel. The information thus was accessible to Faniola.

Faniola has not, it appears, availed herself of the opportunity to go to these other sources for information about these cases. In this regard, Beuckelaere testified that he attempted to locate more information regarding the claims listed, and Ford's legal management system did not contain any other information. See id. at 199-200. Thus, this situation was not one in which the corporate representative did nothing to prepare himself for the deposition; rather, he sought more information and found none.

Beuckelaere's preparation and responsiveness was appropriate. The Court will deny Faniola's motion.

### C. SANCTIONS AGAINST FORD ARE NOT APPROPRIATE.

There was no need for Ford to file a motion for protective order when it had objected to similar requests and Faniola had not challenged the objection. Ford's corporate representative answered the questions accurately and completely within the scope of the Court's rulings on discovery. Ford has reasonably followed the Court's directives and complied with the Court's orders in responding to Faniola's discovery requests. Sanctions are not appropriate.

Faniola suggests to the Court that it should default Ford for discovery violations. The Court's granting of a summary judgment for Ford on all issues of liability moots this request.

**IT IS ORDERED** that Faniola's Third Motion to Compel Discovery is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Roy A. Jacobson, Jr.
J. Douglas McCalla
Larissa A. Ferullo
SPENCE, MORIARITY & SHOCKEY, LLC
Jackson, Wyoming

    - and -

Dennis K. Wallin
LAW OFFICES OF DENNIS K. WALLIN, PC
Moriarty, New Mexico

    *Attorneys for Plaintiff Michelle Faniola*

Jeffrey M. Croasdell
Matthew S. Wermager
Michael Brescia
RODEY DICKASON SLOAN AKIN & ROBB, PA
Albuquerque, New Mexico

    - and -

Gerard Cedrone
LAVIN COLEMAN O'NEIL RICCI FINARELLI & GRAY
Philadelphia, Pennsylvania

    *Attorneys for Defendants Mazda Motor Corporation, Mazda Motor of America and Ford Motor Company*