IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE FANIOLA, individually and
as the parent and natural guardian of
MATTHEW HART, a minor child,

        Plaintiffs,

vs.                                                No. CIV- 02-1011 JB/RLP

MAZDA MOTOR CORPORATION, a foreign
corporation, MAZDA MOTOR OF AMERICA,
a California corporation, and FORD MOTOR
COMPANY, a Michigan corporation,

        Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Ford Motor Company's Motion for Summary Judgment, filed October 27, 2003 (Doc. 51). The Court held a hearing on this motion on March 22, 2004. The primary issues are: (i) whether Defendant Ford Motor Company ("Ford") owed Defendants Mazda Motor Company and Mazda Motor of America ("Mazda") a duty to provide information and knowledge; and (ii) if so, whether Faniola may purse a claim based on that duty. The Court has previously entered an Order granting this motion and dismissing Ford from this case. See Order, filed March 23, 2004 (Doc. 88). This opinion is intended to explain more fully the Court's reasoning for its previous Order.

## FACTUAL BACKGROUND

Faniola's case is about an alleged defective fuel tank in a 1992 Mazda Protege. In 1992, Ford owned 25% of Mazda common stock. See Ford's Supplemental Response to Plaintiff's First Set of Discovery, Interrogatory Number 22. In 1996, Ford owned approximately 33% of Mazda's capital stock. See id. Ford officers, directors, and/or employees were also Mazda board members. See

Ford's Supplemental Response to Plaintiff's First Set of Discovery, Interrogatory Number 20. Every year from 1989, when William Kath, a former supervising engineer at Ford, was on the Mazda Board of Directors, through 2002, there have been no less than three and as many as nine Ford officers, directors, and/or employees on the Mazda Board of Directors. See id.

Ford and Mazda shared, and still share, substantial business. See Mazda In Brief, Business with Ford Motor Company (July 1999 ed.). In another case, Ford's expert described how Ford and Mazda "shared design, development, certification, manufacturing, and distribution responsibilities" for joint venture programs. See Affidavit of Richard R. Ruth ¶ 3, at 2 (executed June 17, 1998). Auto Alliance International, Inc., is a joint venture between Ford and Mazda, where employees of both companies transfer in and out, where both Ford and Mazda vehicles are produced, and where Ford and Mazda are the Joint Manufacturers for at least one vehicle. See Deposition of Phillip Beuckelaere at 190:6 to 191:16, 193:6 to 14 (taken February 3, 2004); Andonian v. AutoAlliance Intern., Inc., 2003 WL 2010745 *1, fn. 1 (E.D. Mich. Feb. 25, 2003)("AAI, a joint venture between Ford Motor Company and Mazda North America, is a contract manufacturer of the Mercury Cougar coupe and the Mazda 626 sedan.").

Mazda and Ford shared responsibility for design, development, and testing of the Escort, which uses the same platform[1] as the Protege. See Sealed Exhibit 1 at 9 to 13; Deposition of Kenji Matsuda at 192:5 to 196:3 (taken January 27, 2004). Ford entered into a contract with Mazda regarding the design and development of the Ford Escort, which by its terms imposed duties on Ford

---

[1] The "platform" refers to the basic layout or shell of the vehicle. See Transcript of Hearing at 32:8-20 (March 22, 2004). The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

for Mazda's benefit. See Sealed Exhibit 1. Faniola asserts that these duties included sharing safety knowledge and cost sharing responsibilities, including product liability concerns.[2]

Ford and Mazda engaged in Joint Safety Meetings concerning their common products by holding program coordination meetings between 1987 and 1990 to discuss issues relating to the Escort fuel tank design and testing. See Ford's Response to Plaintiff's Second Set of Discovery, Interrogatory Number 10. That is the same period in which Mazda designed and tested the Protege. See id. During the Escort joint venture, Ford sent engineers to Japan for meetings, and Mazda sent engineers to the United States for meetings. See Joint Safety Meeting Minutes at 1, 46 (1991); Matsuda Depo. at 198:3-17.

Ford and Mazda discussed the Escort's fuel tank and heat shield design changes and related testing of these components. Faniola asserts that these discussions provided alternative design knowledge to Ford and to Mazda for the Protege. Ford held reviews to determine whether Mazda met Ford's standards with regard to the design safety on the Escort and would interject its own safety guidelines if Mazda's were not satisfactory. See Beuckelaere Depo. at 91:4 to 18.

Mazda designed the Protege with a metal fuel tank, but Ford altered the Mazda design of the fuel tank and fuel system design for the Escort by using a plastic tank and a heat shield. See Ford's Response to Plaintiff's Second Set of Discovery, Interrogatory Number 4. Ford knew and reported to NHTSA the advantages of plastic tanks in 1978. See Letter from J.C. Eckhold, Director Ford Automotive Safety Office, to Joan Claybrook, dated October 10, 1978. Ford has actual knowledge

---

[2] Because this exhibit is sealed, the Court will not quote the document. Based on a review of the document, the Court does not believe that the language used supports a finding that Ford had a duty or duties to provide Mazda with information about its shielding of the Ford Escort's fuel tank or about its decision to use a plastic fuel tank rather than a metal fuel tank.

that plastic fuel tanks had superior resistance to penetration from foreign objects. Ford tested plastic fuel tanks before 1978 and found the plastic fuel tank "has the ability to withstand impact forces" and "is able to resist puncturing and rupture." Ford Motor Company Investigation of a Non-Metallic Material for Passenger Car Fuel Tank Applications Report at 3.

Both Ford and Mazda protected fuel lines from stones and abrasions by using a metal protector. See Matsuda Depo. at 171:7 to 174:3. Mazda uses a shield on its 1999 Protege to "protect from ground heat." Id. at 259:17 to 260:8.

On August 25, 1999, Faniola was driving a 1992 Mazda Protege east along Interstate 40 in Bernalillo County, New Mexico when she struck a solid steel semi-truck brake shoe that weighed nearly 20 pounds. Though the fire report states that Faniola was traveling between 70 and 75 miles per hour, Faniola alleges that she was traveling between 50 and 55 mph. The brake shoe rotated under Faniola's vehicle, struck several places, and punctured her gas tank.

Faniola saw smoke coming from the back of her vehicle and pulled to the side of the road. When she attempted to exit her vehicle from the driver's side, she noticed flames coming from underneath the car. She then stood up on the driver's seat, stepped to the passenger seat, reached to the back seat to grab her purse, sat down on the passenger seat, pushed open the door, and ran from the vehicle. Faniola alleges that she was burned when she ran from the vehicle.

Ford asserts that there are four undisputed, material facts. First, Faniola's accident involved a Mazda Protege. See Complaint for Personal Injuries Due to Defective Product ¶ 14, at 4, filed August 15, 2002 (Doc.1)("Complaint"). Second, Mazda Motor Corporation manufactures the Mazda Protege. See Defendant Mazda Motor Corporation's Supplemental Answers and Responses to First Set of Interrogatories and Requests for Admission, Interrogatory 3. Third, Ford was not

involved in the design, testing, manufacture, assembly, or any other aspect of the Mazda Protege. See id. Interrogatory 14. Fourth, Ford does not control Mazda Motor Corporation's Board of Directors. See Defendant Mazda Motor Corporation's Responses to First Set of Requests for Production of Documents, RFP 30.

Mazda and Ford are competitors in the automobile industry.

## PROCEDURAL BACKGROUND

Faniola's defect allegations include both negligence and strict product liability theories stemming from the defective design, production, and marketing of Faniola's 1992 Protege. See Deposition of Jerry G. Wallingford at 101:5 to 102:25 (taken November 7, 2003); Deposition of Ronald E. Elwell at 139:2 to 140:23 (taken November 13, 2003). Faniola's Complaint asserts three claims against Ford allegedly arising out of an August 1999 automobile accident. Specifically, in Count Three, Faniola alleges that Ford negligently breached a duty to provide to Mazda information regarding the potential for road debris in the United States. In Count Six, Faniola alleges that Ford "contributed to" a defective design of a non-Ford vehicle by failing to provide information to Mazda, which she alleges supports a finding that Ford should be held strictly liable. Finally, Count Seven alleges that Ford was engaged in a joint enterprise with Mazda.

## STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" First Savings Bank, F.S.B. v. First Bank Sys., Inc., 101 F.3d 645, 650 (10th Cir. 1996)(quoting Fed. R. Civ. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the

non-moving party." Id.

The summary judgment movant may meet its burden by pointing out the absence of evidence that could support the non-movant's case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If Ford meets that burden, the burden then shifts to Faniola to prove that a genuine issue of material fact exists. See Pueblo of Santa Ana v. Kelly, 932 F. Supp. 1284, 1287-88 (D.N.M. 1996). The opposing party may not successfully resist entry of judgment merely by asserting that the pleadings raise a factual issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.

If Faniola does not prove an essential element of her case for which she has the burden of proof at trial, summary judgment is warranted. See Celotex Corp. v. Catrett, 477 U.S. at 323; Pueblo of Santa Ana v. Kelly, 932 F. Supp. at 1288. Under New Mexico law, the existence of a legal duty is a question of law for the court to determine. See Philippi v. Sipapu, Inc., 961 F.2d 1492, 1495 (10th Cir. 1992).

**LEGAL ANALYSIS**

There is no authority for the proposition that a shareholder in a non-close corporation owes that corporation a fiduciary duty or is a co-venturer or partner with that corporation. Further, even if the law imposed such a duty on Ford for Mazda's benefit, Faniola does not stand in the shoes of the real party in interest and cannot bring these claims. Thus, Faniola's claims against Ford fail.

**I.  FANIOLA HAS NOT SHOWN THAT FORD OWED MAZDA A DUTY.**

For Faniola to prevail on her cause of action for negligence, she must prove the following elements: duty, breach of duty, proximate cause, and damages stemming from the breach. See Lopez v. Maez, 98 N.M. 625, 630, 651 P.2d 1269, 1274 (1982). Faniola must, therefore, first establish the

existence of a duty before she may pursue her claim for negligence in Count Three of her Complaint. New Mexico courts have also adopted the law of strict products liability in tort set forth in the Restatement (Second) of Torts § 402A. See Stang v. Hertz Corp., 83 N.M. 730, 732, 497 P.2d 732, 734 (1972). Under this doctrine, Faniola has the burden of proving the following elements to support her claim for strict liability against Ford in Count Six of her Complaint: (i) the product was defective; (ii) the product was defective when it left the Defendant's hands and was substantially unchanged when it reached the user or consumer; (iii) that because of the defect, the product was unreasonably dangerous to the user or consumer; (iv) the consumer was injured or was damaged; and (v) the defective condition of the product was the proximate cause of the injury or damage. See Tenney v. Seven-Up Co., 92 N.M. 158, 159, 584 P.2d 205, 206 (1978). Nevertheless, Faniola pursues this cause on the basis of the same alleged duty of Ford to disclose information to Mazda. See Complaint ¶ 62, at 19. While the law for negligence and strict liability are different, the Court will analyze Faniola's duty allegations together.

### A. THE LAW DOES NOT IMPOSE ON FORD A FIDUCIARY DUTY TO DISCLOSE INFORMATION TO MAZDA.

Faniola's causes of action against Ford rely on an alleged duty flowing from Ford to Mazda. There is, however, no evidence to prove that Ford and Mazda were partners or co-venturers in the design or manufacture of the Protege. Additionally, there is no evidence to establish that, in its capacity as an Mazda stockholder, Ford owed Mazda a duty. Accordingly, there is no duty flowing from Ford to Mazda, and the Court will grant Ford summary judgment.

#### 1. Stockholders do not Owe Corporations Fiduciary Duties.

The general rule is that stockholders in corporations the size of Mazda do not owe the

corporations fiduciary duties. See Berman v. Physical Medicine Associates, Ltd., 225 F.3d 429, 434 (4th Cir. 2000)(holding that stockholders do not owe another stockholder and director of a corporation a fiduciary duty because stockholders are not partners); Priddy v. Edelman, 883 F.2d 438, 445 (6th Cir. 1989)(holding that absent control of corporation, minority shareholders owe no fiduciary duty to other shareholders). There are two situations in which the courts have held that a shareholder owes a fiduciary duty to a corporation. The first is in the case of a majority stockholder in a close corporation. See Walta v. Gallegos Law Firm, P.C., 2002-NMCA-015 ¶ 35-38, 131 N.M. 544, 551-52. A close corporation is "typified by: (1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction, and operations of the corporations." Id. 2002-NMCA-015 ¶ 32, 131 N.M. at 551 (quoting Donahue v. Rodd Electrotype Co., 328 N.E.2d 505, 511 (1975)). Mazda does not satisfy these three criterion. Mazda's stock is publicly traded in Japan, and Mazda stockholders, even a majority stockholder, thus cannot be fiduciaries of that corporation on the basis that it is a close corporation.

The other method by which courts have held a shareholder has a fiduciary duty is when that "shareholder steps out of his role as a shareholder and usurps the functions of a director in managing corporate affairs." In re Kaiser Merger Litigation, 168 B.R. 991, 999 (D. Colo. 1994)(citing Harriman v. E.I. DuPont de Nemours & Co., 372 F. Supp 101, 105 - 106 (D. Del. 1974)). Faniola has not pointed the Court to any evidence in the record that there was any such usurpation in the present case or that Ford in some way stepped into the shoes of a director in managing Mazda's corporate affairs. This second method is, therefore, also not available to Faniola.

Faniola's only other alternative to hold Ford liable for a duty to Mazda based on its status as

a shareholder is to pierce the corporate veil. The Court may disregard Mazda's corporate form and hold Ford liable as an individual shareholder for wrongs that Mazda committed if Faniola can establish the three requirements for piercing the corporate veil: "(1) instrumentality or domination; (2) improper purpose; and (3) proximate cause." Garcia v. Coffman, 1997-NMCA-092, ¶ 10, 946 P.2d 216, 219.

First, Faniola asserts that she meets the requirement of instrumentality or domination because the evidence establishes that Ford was a majority shareholder in Mazda; Ford officers, directors and/or employees served on Mazda's Board of Directors; and the two corporations were involved in an extensive history of business dealings with each other including a number of joint ventures. This evidence is not sufficient to meet the first requirement for piercing the corporate veil. "This requisite [instrumentality or domination] is referred to as the alter ego doctrine." Id. ¶ 15, 946 P.2d at 220. The alter ego doctrine means that the first element requires proof that the "subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control and for the purposes of some dominant party." Id. ¶ 15, 946 P.2d at 220 (internal quotation marks and citation omitted). Thus, to meet this element, Faniola must show that Mazda functioned under Ford's domination and control and for Ford's purposes. Faniola has not pointed to evidence in the record that Mazda did not operate for its own purposes and, instead, that it operated for Ford's purposes. At most, the evidence Faniola points the Court to establishes merely that, at certain times and in certain contexts, the two corporations shared a mutual purpose. As the New Mexico Court of Appeals stated, "the alter ego doctrine is not implicated simply because the shareholder in question owns the vast majority of the corporation's stock." Id. ¶ 17, 946 P.2d at 220. Faniola has not, therefore, established the first requirement.

Second, Faniola's only argument in support of the improper purpose requirement is that her allegations of strict products liability demonstrate a genuine issue of material fact that should go to a jury. The improper purpose requirement "is designed to apply to a parent corporation that used its subsidiary to carry out an unjust act." Id. ¶ 21, 946 P.2d at 221. The New Mexico Court of Appeals provided two examples of improper purpose: (i) "[m]isrepresentation of a corporation's assets and purposes"; and (ii) "participation or direction of improper activities and joint improper acts." Id. ¶ 17, 946 P.2d at 221. "Some form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud is required." Scott v. AZL Resources, Inc., 107 N.M. 118, 122, 753 P.2d 897, 901 (1988). Not only has Faniola not established that Ford exercised such domination over Mazda as to put itself into the place of a parent corporation, Faniola has not pointed the Court to evidence in the record of an improper purpose. Faniola has thus not established the second element. Finally, without instrumentality or domination and an improper purpose, Ford's relationship with Mazda cannot proximately have caused Mazda or Faniola any damages.

While the law points solidly in one direction -- that Ford did not owe Mazda a duty based on its position as a stockholder -- the consequences of imposing a fiduciary duty upon stockholders for the benefit of the corporation reveal the problems with Faniola's claims against Ford. If Ford had a fiduciary duty to Mazda, one of its foreign competitors, it would have to disclose, as Faniola asserts Ford must do, a multitude of information regarding many subjects that might benefit Mazda. If the Court were to imply a fiduciary duty in this case, the same rationale could require every stockholder to disclose to the corporation that issued the stock any information which may benefit that corporation. If Faniola's theory were correct, the inherent risks and burden of owning stock, and the exposure to potential litigation that would accompany every stock purchase, could undermine the use

of the corporate structure to transact business.

### 2. Ford and Mazda are not Partners or Co-Venturers.

Considering all of Faniola's factual allegations in the light most favorable to her, Ford did not have a fiduciary duty to Mazda unless Ford and Mazda were partners or joint-venturers.

#### a. Ford and Mazda are not Partners.

Faniola is asking the Court to treat Ford as a partner of Mazda in the production of this vehicle and hold Ford liable for alleged design defects in a 1992 Mazda Protege. Although Ford owned stock in Mazda, the record does not allow the Court to consider Ford a partner or joint venturer with Mazda in the production of a vehicle that Mazda designed, tested, and sold.

In New Mexico, the Legislature has statutorily defined partnerships: "(a) Except as otherwise provided in Subsection (b), the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." NMSA 1978, § 54-1A-202(a). Here, Faniola does not allege that Mazda and Ford are "carrying on as co-owners" any business to produce Protege vehicles. The evidence Faniola points to in support of her partnership theory -- the Joint Venture Agreement between Ford and Mazda -- establishes only that Mazda and Ford joined together to produce the Escort, but not that they worked together to produce the Protege. Although Faniola argues that Ford profited from the production of the Protege, this was only in Ford's capacity as a shareholder. That a shareholder profits from the conduct of a corporation does not establish that the shareholder and the corporation are partners. Faniola has not pointed to evidence in the record that Ford and Mazda produced the Protege as partners or that they shared in the profits from the Protege.

While the connection between Mazda and Faniola may be clear, the connection between Ford

and Faniola is not. Without rewriting the elements of what constitutes a fiduciary relationship, the only viable claims that Faniola has are against Mazda.

### b. Ford and Mazda are not Joint-Venturers.

Faniola contends that Mazda was responsible for or shared responsibility with Ford for design, development, certification, manufacture, and distribution of the Ford Escort/Mercury Tracer and of the Mazda Protege, using the same platform and with minimal differences. Faniola reaches this conclusion because she contends that the Escort, Tracer, and Protege were all "clone" vehicles that were part of the joint venture.

In New Mexico, the feature that distinguishes a joint venture from a partnership "is the joint venture's more limited scope." In re Groff, 898 F.2d 1475, 1476-77 (10th Cir. 1990). In Cooper v. Curry, 92 N.M. 417, 589 P.2d 201 (Ct. App. 1978), the New Mexico Court of Appeals held that a joint venture or enterprise includes the following elements: (i) a community of interest to perform a common purpose; (ii) a joint proprietary interest in the subject matter; (iii) a mutual right to control; (iv) a right to share in the profits; and (v) a duty to share in the losses. See id. at 421, 589 P.2d at 205.

As a general matter, to find that the privileges that inure to a stockholder of a corporation would justify the imputation of partnership law into the law of corporations is contrary to a number of established legal principles that govern the nation's financial economy. To impose joint venturer law or partnership law on a stockholder would disregard the distinction between corporations and other business structures for doing business.

More importantly, Faniola cannot show that the facts in the record satisfy the specific elements for a joint venture. First, with regard to a community of interest, Mazda was the sole

designer and producer of the Protege, so there did not exist a "common purpose" that Mazda and Ford performed. That the two corporations shared a common purpose with regard to the Escort is insufficient to create a common purpose as to another vehicle, here the Protege.

Second, Faniola has not established a genuine issue of material fact whether Ford was involved with the production of the Protege. Ford, therefore, had no proprietary interest in the success or failure of the Protege beyond its ownership of stock. Faniola argues that both corporations had a proprietary interest in the Escort, and that the Escort relies on the Protege platform. This is not sufficient, however, to show that both corporations had a proprietary interest in the Protege. Thus, Faniola does not meet the second element which requires a joint proprietary interest.

Third, while Mazda may have had a mutual right of control over the Escort, the same cannot be said of Ford with regard to the Protege. Faniola does not point to evidence in the record establishing that Ford had control over the Protege. Thus, Faniola does not meet the third element which requires a mutual right of control.

Fourth, as noted previously, Faniola does not point to evidence in the record that Ford had a right to share in the profits Mazda received from the Protege. That Mazda shared in the profits related to the Escort, and that Ford, as a shareholder, received benefits based on Mazda's overall profits, is not sufficient to meet this element.

Finally, just as Faniola has not established that Ford had a right to share in the profits, neither has she pointed to evidence in the record that Ford had a duty to share in any losses attributable to the Protege. Faniola does not meet this element.

Faniola has not established a genuine issue of material fact whether a partnership or joint

-13-

venture existed between Ford and Mazda related to the Protege. She has not, therefore, established that Ford owed Mazda a duty on either of these bases. Because Faniola has not established a genuine issue of material fact whether Ford owed Mazda a duty, she cannot pursue her claims for negligence and strict liability against Ford, which are both based on the existence of such a duty.

## II. EVEN IF FORD OWED MAZDA A FIDUCIARY DUTY, AND FORD BREACHED THAT DUTY, FANIOLA CANNOT SUE FOR THAT BREACH.

Even assuming Faniola could establish that Ford owed Mazda a duty that Ford breached, she has not offered a basis to allow her to pursue a claim based on the breach of a duty owed to Mazda by Ford. As the Court has already explained, imposing on Ford a fiduciary duty to disclose to its competitor, Mazda, all information relating to the operation of safe automobiles based on its stock ownership in that company creates a number of problems. Even if the law were to impose such a duty on Ford, the corporation, here Mazda, would be the real party in interest, and that corporation, not Faniola, would be the one that could bring an action for the breach of that duty.

A real party in interest is one who owns the right being enforced or who is in a position to discharge the defendant from liability. See Moody v. Stribling, 1999-NMCA-94 ¶ 8, 127 N.M. 630, 634 (citing Edwards v. Mesch, 107 N.M. 704, 706, 763 P.2d 1169, 1171 (1988)). Only the real party in interest can bring suit. See Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest.").

A breach of fiduciary duty, as Faniola alleges, is an injury to the corporation, and a shareholder has no standing to bring suit. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548 (1949); Lewis v. Knutson, 699 F.2d 230, 237-38 (5th Cir. 1983)(noting that a shareholder has no standing to bring a civil action against directors and managers of the corporation in which the

-14-

shareholder owns stock because the corporation and not the shareholder suffers the injury). New Mexico adheres to this general proposition that only the corporation, and not its individual shareholder, can bring claims that "derive from damage to the corporation." Moody v. Stribling, 1999-NMCA-94 ¶ 8, 127 N.M. 634. "An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief." Marchman v. NCNB Texas Nat'l Bank, 120 N.M. 74, 81, 898 P.2d 709, 716 (1995) (quoting NCNB Nat'l Bank v. Tiller, 814 F.2d 931, 937 (4th Cir. 1987)).

Faniola is not a shareholder in Mazda. Thus, the two exceptions to the general rule – that the shareholder has suffered an injury separate and distinct from the other shareholders or that this shareholder had a special relationship with the wrongdoer, see Marchman v. NCNB Texas Nat'l Bank, 120 N.M. at 81-82, 898 P.2d at 716-17 – are not applicable.

In this case, only Mazda possibly stands in the position of discharging Ford from any liability arising from its alleged breach of duty. Faniola does not stand in the role of a shareholder, but is an outsider to the Mazda corporation. If Ford did owe any duty, it could only flow to Mazda's benefit, the corporation in which it holds stock.

Only Mazda itself could maintain any action for a breach of the alleged duty. At most, Faniola possibly could be considered an indirectly injured party, but then she must look to the directly injured party for relief. Thus, Faniola only has legal standing to pursue claims against Mazda, and it is only Mazda who could possibly assert a cause of action for breach of duty against Ford.

The third and sixth causes of action are based upon a breach of some duty that Ford owes to Mazda. Only Mazda, if it, can bring such a claim. Even if the law were to imply a duty between Ford and Mazda in 1992, only Mazda -- not a third party who does not own Mazda stock -- can assert an

action for a breach of that duty.  Accordingly, Faniola lacks standing to pursue her negligence and strict liability claims.

**III. BECAUSE FORD IS NOT A PARTNER OR CO-VENTURER WITH MAZDA FOR THE PROTEGE, FANIOLA MAY NOT PURSUE HER CLAIM FOR JOINT ENTERPRISE LIABILITY AGAINST FORD.**

To prevail in her seventh cause of action for joint enterprise liability, Faniola must prove that, by virtue of its Mazda stock ownership, Ford was a joint venturer with Mazda for the vehicles it might produce.  As previously discussed, Ford was not a partner or joint-venturer with Mazda and cannot, therefore, pursue a claim for joint enterprise liability against Ford.  Therefore, Faniola has not sustained her causes of action against Ford.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Roy A. Jacobson, Jr.
J. Douglas McCalla
Larissa A. Ferullo
SPENCE, MORIARITY & SHOCKEY, LLC
Jackson, Wyoming

Dennis K. Wallin
LAW OFFICES OF DENNIS K. WALLIN, PC
Moriarty, New Mexico

*Attorneys for Plaintiff Michelle Faniola*

Jeffrey M. Croasdell
Matthew S. Wermager
Michael Brescia
RODEY DICKASON SLOAN AKIN & ROBB, PA
Albuquerque, New Mexico

- and -

Gerard Cedrone
LAVIN COLEMAN O'NEIL RICCI FINARELLI & GRAY
Philadelphia, Pennsylvania

*Attorneys for Defendants Mazda Motor Corporation, Mazda Motor of America and Ford Motor Company*