IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE FANIOLA, individually and
as the parent and natural guardian of
MATTHEW HART, a minor child,

      Plaintiff,

vs.                                                            No. CIV-02-1011 JB/RLP

MAZDA MOTOR CORPORATION, a foreign
corporation, and MAZDA MOTOR OF AMERICA,
a California corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Contempt and Sanctions Against Plaintiff and Plaintiff's Expert Ronald Elwell, filed April 26, 2004 (Doc. 174). The primary issue is whether the Plaintiff Michelle Faniola's expert witness, Ronald E. Elwell, violated the Court's Order in limine, filed April 15, 2004 (Doc. 149), such that the Court should find him in contempt and impose sanctions against Faniola's counsel and Elwell. Because the Court does not believe Elwell's testimony meets the standards for civil contempt, the Court will deny the motion without prejudice to allow Mazda to request a limiting instruction.

## BACKGROUND

**1.**     **Other Accidents and Incidents.**

In its April 15, 2004 Order, the Court stated among other things: "The Court does not believe that accidents involving collisions are substantially similar to accidents involving road debris and, therefore, will preclude Elwell from testifying regarding any accidents involving collisions."

Order ¶2, at 3. Before Elwell took the stand, other witnesses testified about approximately eighteen other accidents. During his testimony, Elwell mentioned collisions, see, e.g., Transcript of Jury Trial at 6:17-20 (April 23, 2004, afternoon session)("Transcript")(objection sustained); id. at 20:15-17 (no objection); id. at 20:18-22 (no objection); id. 10:5-16 (objection sustained); and other incidents, see, e.g., id. at 22:12-25 (objection sustained); id. at 23:1-24 (objection sustained); id. at 28:24-25 (Faniola's counsel interrupted and consulted with witness); id., 29:9-11 (objection sustained); id. at 30:16-31:8 (no objection); id. at 32:6-33:4 (objection sustained); id. at 33:5-34:24 (no objection); id. at 61:9-17 (no objection); id. at 95:6-9 (Court instructed Faniola's counsel to rephrase the question)(April 23, 2004, morning session); id. at 96:15-97:1 (no objection); id. at 34:16-22 (no objection to some of answer; objection sustained as to portion of answer). Thus, Mazda objects now to some testimony to which it did not contemporaneously object at trial, see Fed. R. Evid. 103(a)(1)(requiring "a timely objection or motion to strike . . . , stating the specific ground of objection . . . ."), and complains about some sidebars where objections were sustained. For the most part, Mazda does not explain what evidence was actually elicited that prejudiced it or violated the Court's Order.

**2.     GM Shield Testing.**

GM apparently took documents away from Elwell before he left GM. See Transcript at 35:4-5 (April 23, 2004, afternoon session). In the Court's April 15, 2004 Order, the Court stated: "If Elwell intends to testify regarding shielding testing conducted by General Motors in the 1960s and 1970s, he must produce documents to show that testing occurred rather than relying on his memory." Order ¶ 1(a), at 2. The Court's concern was that, without some documents explaining any testing at GM, Mazda would be unable to effectively cross-examine Elwell about his memory of testing at

GM 30 or 40 years ago.

In his testimony, Elwell mentioned other testing, but it is difficult to determine whether all or any of this testing went to shielding. See Transcript at 12:4-19 (objection overruled)(April 23, 2004, afternoon session); id. 13:10-15: 5 (objection overruled). He also discussed testing that did not involve GMC. See id. at 18:16-19: 22 (objection overruled). Further, Elwell was able to back up some of his testimony about testing with documents, allowing Mazda to cross-examine Elwell about that testing. See, e.g., Transcript at 18:20-20:10 (April 23, 2004, afternoon session). Significantly, the Court recessed early in Mazda's cross-examination of Elwell on Friday, giving Mazda the weekend to prepare for most if its cross-examination.

**3.      Alternative Designs.**

The Court's Order also excluded any testimony by Elwell relating to the alternative designs of: (i) changing the thickness of the fuel tank; (ii) changing the location of the fuel tank; or (iii) using a bladder in the fuel tank. See Order ¶ 1b-d, at 2. With regard to testimony about the location of the fuel tank, the Court clarified: "This does not preclude Elwell from making statements regarding placement in the context of his testimony on shielding, such as 'If the placement of the fuel tank is here, there needs to be shielding.'" Id. Elwell testified regarding the location of the tank several times. See Transcript at 105:24-107:8 (objection overruled)(April 23, 2004, morning session); id. at 11:11-12:13 (objection sustained)(April 23, 2004, afternoon session); id. at 17:5-9 (no objection). To the extent that such testimony came in, the Court believes that Elwell did not run afoul of the Court's Order. For example, Elwell testified about the auto racing industry: "[T]hey have special rules on their fuel systems, which go far beyond what the average automobile does." Transcript at 94:5-94:15 (April 23, 2004, morning session). Mazda objected to this reference, and the Court held

a bench conference during which it became clear that the differences in the auto racing industry's rules on fuel systems refers to the auto racing industry's use of bladders. See id. at 94:14-23. The Court sustained the preemptive objection and the jury did not hear any testimony specifically referring to the use of a bladder.[1]

### 4. Japanese "Mentality"

The Court's Order also precluded any reference by Elwell to the Japanese mentality. See Order ¶ 5, at 3 ("With regard to the alleged **Japanese mentality**, Elwell may not testify as to his opinions regarding or speculation about Japanese mentality and/or perceptions relating to Americans.")(emphasis in original). Mazda asserts that Elwell testified in violation of this portion of the Order but the Court does not see a violation in the statements Elwell made. See Transcript at 89:10-13 (April 23, 2004, morning session)("All of those had to be evaluated to find out if General Motors was doing a responsible job as a member of the community, the automotive community and also the community of citizens of this country.")

## LEGAL ANALYSIS

Faniola's direct examination of Elwell was ragged, punctuated by many objections and sidebars. Mazda attempted vigorously to enforce its interpretation of the Court's April 15, 2004 Order. The Court took a number of recesses, counseled Faniola's counsel about limits, and instructed him to warn Elwell to follow the Order conscientiously. From the Court's perspective, Faniola's counsel attempted to elicit as much favorable testimony as the Court's April 15, 2004 Order allowed,

---

[1] The jury did hear Elwell's statements about the auto racing industry, but the Court is not convinced that such statements suggested to the jury anything about the use of a bladder. Until Mazda pointed out the connection, the Court did not know the statement had anything to do with the use of a bladder.

but also counseled Elwell to obey the April 15, 2004 Order and spoke to him about the Court's limitations. Mazda's broad reading of the order and Faniola's narrow reading of the same order created frequent objections, conflicts, and controversies. The Court is not convinced that either counsel was always wrong or always right. The problem may have been that Elwell did not, early on, realize how seriously the Court took its order.

Mazda asks that the Court strike from the record all of Elwell's testimony and to instruct the jury of that exclusion. The Court does not believe that all of Elwell's testimony should be excluded, but at most, Mazda should extract out any prohibited statements and move on specific statements. Furthermore, because Mazda did not contemporaneously object to some of Elwell's statements, the Court should not strike Elwell's entire testimony.

Mazda requests that, if the Court is not inclined to entirely exclude Elwell's testimony, the Court should give a limiting instruction. Mazda proposes a limiting instruction, but does not state when the Court should give the proposed instruction. The Court will deny the motion for the specific instruction requested, but the will do so without prejudice. Mazda may argue in favor of a limiting instruction to be given to the jury regarding Elwell's testimony during the trial or in the final instructions. The Court invites Mazda to look at proposed Jury Instruction No. 26 and see if it satisfies Mazda's concerns or whether further changes need to be made.[2]

Faniola asks that the Court cite Elwell for contempt. "A court is justified in holding a party

---

[2] While the Court issued this written opinion after it instructed the jury, the Court orally ruled on this motion on Tuesday, April 27, 2004. See Transcript at 1:16-2:15 (April 27, 2004, morning session). Despite inviting Mazda to submit an appropriate instruction and advising the Court when it should be given, Mazda did not mention the possibility of a limiting jury instruction until after the Court instructed the jury. Because Mazda did not submit a specific instruction, the Court denied this motion. Moreover, Mazda has not shown the Court how Jury Instruction No. 26 does not address its concerns.

in civil contempt for failure to comply with an order of the court when: (1) the court's order is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has failed to make reasonably diligent efforts to comply." Beller v. United States, No. CIV 02-1368, Memorandum Opinion and Order at 2 (D.N.M. filed December 16, 2003)(Johnson, J.)(citing New York State Nat'l Organization for Women v. Terry, 886 F.3d 1339, 1351 (2d Cir. 1989)). While the Court agrees that, at times, Elwell's testimony may have strayed beyond a broad reading of the limits imposed by the Court in its Order, the Court does not believe that it is appropriate to hold Elwell in contempt or to otherwise impose sanctions on Faniola's counsel or Elwell. Mazda did not object to some of the testimony about which it now complains, the Court sustained some objections and the evidence did not come in, and some of the testimony created no prejudice to Mazda that the Court can ascertain. Thus, on some, if not all, of Elwell's statements, Mazda has not presented clear and convincing proof of noncompliance. On other statements, the Court cannot say that Faniola failed to make reasonably diligent efforts to comply.

Finally, Mazda asks that the court grant its attorney's fees related to the issues set forth in this motion. Mazda does not cite any applicable exception to the American Rule, and the Court does not know of one. The Court will deny Mazda' request for attorney's fees.

**IT IS ORDERED** that the Defendants' Motion for Contempt and Sanctions Against Plaintiff and Plaintiff's Expert Ronald Elwell is denied, without prejudice to allow Mazda to request a limiting instruction regarding Elwell's testimony.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Roy A. Jacobson, Jr.
J. Douglas McCalla
Larissa A. Ferullo
SPENCE, MORIARITY & SHOCKEY, LLC
Jackson, Wyoming

Dennis K. Wallin
LAW OFFICES OF DENNIS K. WALLIN, PC
Moriarty, New Mexico

    *Attorneys for Plaintiff Michelle Faniola*

Jeffrey M. Croasdell
Matthew S. Wermager
Michael Brescia
RODEY DICKASON SLOAN AKIN & ROBB, PA
Albuquerque, New Mexico

    - and -

Gerard Cedrone
LAVIN COLEMAN O'NEIL RICCI FINARELLI & GRAY
Philadelphia, Pennsylvania

    *Attorneys for Defendants Mazda Motor Corporation and Mazda Motor of America*